DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CARLOS DE LA ROSA** and **FANNY DE LA ROSA,**
Appellants,

v.

**FLORIDA PENINSULA INSURANCE COMPANY,**
Appellee.

No. 4D17-1294

[May 16, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. CACE 15-018784(08).

Dennis N. Urbano of Greenberg Stone & Urbano, Miami, for appellants.

Amy L. Koltnow of Colodny Fass, Sunrise, for appellee.

WARNER, J.

Appellant insureds challenge a final summary judgment for appellee insurer in a case involving water intrusion into their home because of a septic tank backup. The trial court concluded that the insureds had failed to overcome the presumption that their failure to timely report their claim had prejudiced the insurer's investigation. We affirm the summary judgment.

Appellants insured their home with the appellee insurer, Florida Peninsula Insurance Company. The insurance endorsement attached to appellants' homeowners' insurance policy provides:

> **SECTION I — CONDITIONS**
> **2. Your Duties After Loss 2.a.** is replaced by the following:
> a. Give prompt notice to us or our agent;
> . . . .
>
> **2. Your Duties After Loss 2.f.** is replaced by the following:
> f. As often as we reasonably require;

**(1)** Show us the damaged property;

. . . .

**8. Suit Against Us**
No action can be brought against us; unless:
**a.** There has been full compliance with all of the terms of this policy; and
**b.** The action is started within 5 years after the date of the loss.

In April 2014, appellant husband noticed water backing up in his master bathroom shower. Water was seeping into the bathroom floor and sub-floor under the tile. He realized that water must have been leaking for some time. He called a plumbing company, which replaced all of the drainage system for the septic tank.

In February 2015, appellant had his master bathroom renovated because of the water damage. The renovations cost $4,000. Appellant made no other repairs to his home.

Appellant made an insurance claim for $22,274 for the alleged damage to his bathroom in July 2015. The insurer denied the claim, and appellants filed suit. The insurer alleged as an affirmative defense that the appellants had failed to timely report the claim, which had prejudiced the insurer. After discovery, the insurer moved for summary judgment, relying on appellant's deposition, exhibits, and the affidavit of its adjuster.

In his deposition, appellant testified that he took a long time to report his claim because he was not aware of his rights under his insurance policy. Appellant admitted that all of the repairs to his bathroom were complete prior to the insurer inspecting his house.

A licensed adjuster, employed with Florida Peninsula, inspected the appellants' plumbing leak soon after the claim was filed. In a sworn affidavit, the adjuster stated that "[u]pon [his] inspection, it was evident that all repairs had been made to the bathroom where the water reportedly caused damage and the entire bathroom had been totally renovated." He could not observe any water damage from the drainage failure because of the renovation. The adjuster reviewed a photograph taken of the master bedroom before the renovation, but testified that it did not show any water damage. The adjuster also testified that while appellant had kept several damaged building materials from the water leak, such as old drywall and piping, the items were not preserved and were "kept outside and exposed to the exterior elements for over one year." The adjuster was unable to

2

determine "the cause or origin" or the "extent or scope" of any of the damage.

Appellants countered this evidence with their own affidavits. A licensed public adjuster hired by appellants also conducted an inspection of the property in July 2015. In an affidavit, she testified that she "observed water damage to the master bathroom door frame, master bedroom wall and baseboard, master bedroom tile floors, and the bottom kitchen cabinets." She inspected the materials from the damaged master bathroom that the appellants retained, as well as photographs of the water damage and the appellants' invoices from their plumbing repairs. The adjuster found that the damage to the retained materials "were consistent with that of a one-time sudden and accidental waste line backup occurring in April of 2014." She testified that "[t]he only possible event that could have caused this type of damage was a one-time waste line water backup." She estimated the damage as $22,274.45.

In addition, a licensed engineer hired by the appellants inspected the property in February 2017. He also reviewed the photographs of the master bedroom together with the invoices for the repairs to the property. He testified that he also observed visible water damage in the master bedroom, bathroom, and underneath the kitchen cabinets. He opined that this was "classic" damage caused by a one-time wastewater backup, and stated, "The waste line water back up damages observed during my inspection were clearly evident upon my inspection which was conducted in 2017 and would have been evident upon an inspection by the insurer." As to the damage it caused, he stated that the wastewater would damage the walls and floor tiles, which damage would increase as long as it was not removed. He advised that the entire floor should be examined by an architect to determine the extent of damage and remediation needed. He opined that there were multiple ruptured pipes which caused damage to the structure, but only opening the slab could determine the extent of damage.

At the summary judgment hearing, appellants conceded that they gave late notice of their claim and that the trial court had to presume that the insurance company's investigation was prejudiced. Thus, appellants had to present competent evidence to rebut that presumption. Appellants argued that because their adjuster and engineer disagreed with the opinion of the insurance company's adjuster as to whether the cause of the damage could be ascertained, there was an issue of fact. They contended that their experts' findings were not conclusory.

The court found that the issue of prejudice was a question of law and that the facts regarding lack of notice and the renovations were not in dispute. The court stated that the insurer may be able to determine cause and damages, but because of the lack of notice, its "ability to do it [was] certainly hampered." The court concluded that there may be a genuine issue of fact concerning causation, but the pertinent issues were whether the insurer received timely notice of the damage and whether appellants rebutted the presumption of prejudice to the company. The court noted how in the licensed engineer's investigation report, he found that, "A determination of the extent of the damage without opening the slab and performing applicable investigation can only be subjective in nature." Citing *Kramer v. State Farm Florida Insurance Co.*, 95 So. 3d 303 (Fla. 4th DCA 2012), the court granted the insurer's motion for summary judgment, finding that there was no genuine issue of fact regarding the presumed prejudice to the insurer. Appellants now appeal.

This Court reviews de novo a trial court's grant of summary judgment. *Soncoast Cmty. Church of Boca Raton, Inc. v. Travis Boating Ctr. of Fla., Inc.*, 981 So. 2d 654, 655 (Fla. 4th DCA 2008). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

Appellants argue that the court erred in granting summary judgment to the insurer because, even assuming that appellants gave late notice of their claim, there was an issue of fact regarding whether the insurer was prejudiced. Appellants contend that they presented sufficient evidence to rebut the presumption of prejudice.

If an insured breaches the notice provision of his homeowner's insurance policy, "prejudice to the insurer will be presumed, but may be rebutted by a showing that the insurer has not been prejudiced by the lack of notice." *Stark v. State Farm Fla. Ins. Co.*, 95 So. 3d 285, 287-88 (Fla. 4th DCA 2012) (citing *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985)). A notice of damage is a pre-condition to a claim. *Macias*, 475 So. 2d at 1218. The insured has the burden to show the lack of prejudice if its insurer lost the opportunity to investigate the facts of the claim. *Stark*, 95 So. 3d at 288. "Whether the presumption of prejudice to the insurer has been overcome is 'ordinarily . . . a separate issue of fact.'" *Id.* (citation omitted). Before a court grants summary judgment, "the record on such a motion should 'conclusively foreclose[]' the insured's 'ability to overcome the presumption [of prejudice].'" *Id.* (alteration in original) (citation omitted).

4

At the summary judgment hearing, appellants conceded that they gave late notice of their claim and that they had to present evidence to rebut the presumption of prejudice to the insurer. Thus, the pertinent issue is whether appellants presented sufficient counterevidence to rebut the presumption of prejudice from the late notice.

While in this case there may be disputed issues of fact as to whether the insurer was prejudiced in determining the *cause* of the incident, the record forecloses the insured's ability to overcome the prejudice to the insurer in evaluating the extent of the damage because of the delay in making the claim. *See Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 Fed. Appx. 875, 881-82 (11th Cir. 2015). In the insured engineer's report, he notes that the water damage, particularly to the walls and the flooring system, would increase with time when the damage was not promptly remedied. Mold, which would occur due to water intrusion, would expand over time if damaged surfaces were not replaced. Further, he noted that water escape from pipes under the slab would over time cause structural instability, the full extent of which could not be determined at this point without opening the slab to evaluate how much damage has occurred. In other words, the engineer's report itself showed that the damage would likely have increased over time. The insurer was prejudiced by a delay in investigating the claim as it would not be able to determine the damage at the time of the incident. Because of the lack of prompt repairs, the counter-evidence does not overcome the presumption of prejudice. As in *Kramer,* relied on by the trial court, the engineer's report bolsters the insurer's claim that it has been prejudiced by the delay.

We distinguish *Stark v. State Farm Florida Insurance Co.*, 95 So. 3d 285, 287-88 (Fla. 4th DCA 2012), the principal case on which appellants rely. There, the insureds hired a company to repair their roof after Hurricane Wilma in 2005, but their roof continued to leak and their home suffered further damage. *Id.* at 287. They reported their claim over three years after the storm. *Id.* The insurer's inspector assessed the roof damage, but because he was unable to determine the time or cause of the loss, the insurer claimed that it was prejudiced by the delay. *Id.* After the insureds filed suit for breach of contract, the insurer moved for summary judgment. *Id.* In response, the insureds filed several affidavits, including those of an engineer and public adjuster. *Id.* The engineer inspected the property multiple years after the hurricane, and he concluded that there was "a classic pattern of wind damage" and that "[t]he only possible event that could have caused this type of damage was Hurricane Wilma." *Id.* The engineer found that the damage "would have been evident" during the insurer's inspection. *Id.* The insureds' public adjuster also believed that

5

the roof damage was caused by Hurricane Wilma, and he claimed that the insurer's investigator told him "that there appeared to be storm damage to the [insureds'] roof." *Id.* The trial court granted the insurer's motion for summary judgment, finding that the insureds did not present sufficient counterevidence to rebut the presumption of prejudice to the insurer. *Id.*

On appeal, this Court found a disputed issue of fact as to whether the insurer was prejudiced by late notice. *Id.* at 288. The insureds' adjuster's affidavit stated that the damage still evident showed classic hurricane damage, and the insurer's investigator told the insured's public adjuster that he had observed storm damage. *Id.* The counterevidence "suggested that the insureds could convince a finder of fact that their noncompliance with the notice provision [of their insurance contract] did not prejudice the insurer by depriving it 'of the opportunity to investigate the facts.'" *Id.* (alteration added) (footnote omitted) (quoting *Macias*, 475 So. 2d at 1218).

In this case, however, even though there may be disputed issues of fact as to whether the insurer was prejudiced in determining the *cause* of the loss, the facts, even as presented by the insured's adjuster and engineer, show that the insurer would be prejudiced by the passage of time in investigating the *extent* of the loss, and thus, the cost of repair. The insured did not overcome the presumption of prejudice. *See Macias*, 475 So. 2d at 1218. Therefore, the court correctly granted summary judgment.

*Affirmed.*

CIKLIN and KLINGENSMITH, JJ., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**