**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1947
_____

GEORGIAN AMERICAN ALLOYS, INC.; FELMAN TRADING INC.; MORDECHAI
KORF; URIEL LABER,
Appellants

v.

AXIS INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-20-cv-01634)
District Court Judge: Honorable Leonard P. Stark
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on
March 1, 2022
_____

Before: McKEE, AMBRO, and SMITH, *Circuit Judges*

(Opinion filed: August 31, 2022)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

McKEE, *Circuit Judge*.

This appeal arises from the District Court's dismissal of Georgian American Alloy's ("GAA") suit to obtain coverage under a liability insurance policy issued by AXIS. The District Court concluded that AXIS was not obligated to provide coverage because GAA did not provide notice of the claim within the period required by the policy. For the reasons that follow, we will affirm.[1]

I.

GAA argues that under Delaware law[2] AXIS must show prejudice to support a denial of coverage based upon an untimely claim under a claims-made policy. AXIS, however, argues that the prejudice requirement does not apply.[3]

---

[1] We exercise plenary review of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 151 (3d. Cir. 2018). We apply the same standard as the District Court, construing the complaint "in the light most favorable to the plaintiff" to determine whether the complaint contains sufficient factual matter to state a claim of relief that is plausible on its face. *Sweda v. Univ. of Pa.*, 923 F.3d 320, 325 (3d Cir. 2019). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[2] GAA originally relied on Florida law when AXIS denied coverage, but then relied on Delaware law in its complaint. It is uncontested that Delaware law applies here, but to the extent that there is a choice of law issue, applying Florida law does not change the outcome. The District Court properly determined that the insured waived any argument that Florida law imposes a prejudice requirement because GAA's brief did not raise the possibility that Florida law may apply and instead argues that Delaware law applies. *See Premier Comp. Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). However, if there are any questions about choice of law, like Delaware law, Florida law does not require the insurer to show prejudice. *See Bankers Ins. Co. v. Macias,* 475 So. 2d 1216, 1217–18 (Fla. 1985) (holding instead that the insurer is entitled to a presumption of prejudice if the insured "fails to give timely notice" of a claim).

[3] The Specified Insured Exclusion provision, which excludes claims involving Optima Group, LLC, is likely an independent ground to affirm; however, we need not reach this because the notice claim gets us to the same conclusion. The District Court reached its

The parties do not dispute that the policy is a claims-made policy and not an occurrence-based policy. A claims-made policy only covers the insured for claims made during the life of the policy,[4] and coverage is triggered by giving notice of a claim to an insurer.[5]

The Delaware Supreme Court has not yet directly decided whether the issuer of a claims-made policy can deny coverage based upon late notice of a claim without showing prejudice.  However, Delaware the courts that have examined this issue agree that Delaware law does not condition denial of coverage under a claims-made policy upon a showing of prejudice.[6] The District Court was therefore correct in being guided by *Devon Park Association, L.P. v. Federal Insurance Co.*, instead of *Medical Depot, Inc. v. RSUI Indemnity*.[7] GAA argues that the inquiry should have been guided by *Medical Depot*, which required prejudice.[8] However, the policy language there was materially different

---

conclusion on the untimeliness of GAA's claim and did not address whether the case should also be dismissed under the Specified Insured Exclusion provision. Optima Group's presence as a defendant in the Private Bank litigation triggers the application of the exclusion provision, which bars coverage of any claim brought by, on behalf of, or against Optima Group or its affiliates. The plain language interpretation of the Specified Insured Exclusion should end the Court's analysis because the language is clear and unambiguous. *See New Castle County v. Hartford Accident & Indem. Co.*, 970 F.2d 1267, 1270 (3d Cir. 1992) ("When the language of an insurance policy is clear and unambiguous, Delaware applies ordinary principles of contract law. The parties are bound by the plain meaning of the policy . . . .").

[4] *City of Erie v. Guar. Nat'l Ins. Co.*, 109 F.3d 156, 158 (3d Cir. 1997).

[5] *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 325 (3d Cir. 2005).

[6] *See, e.g.*, *Homsey Architects, Inc. v. Harry David Zutz Ins., Inc.*, No. Civ.A.96C-06-082-JOH, 2000 WL 973285, at *12 (Del. Super. Ct. May, 25, 2000); *Devon Park Assoc., L.P. v. Fed. Ins. Co.*, No. 18-2011-LPS (D. Del. Aug. 2, 2019).

[7] *See Devon Park Assoc.*, No. 18-2011-LPS; *Med. Depot, Inc. v. RSUI Indem. Co.*, N15C-04-133, 2016 WL 5539879, at *12 (Del. Super. Ct. Sept. 29, 2016).

[8] *See Med. Depot*, 2016 WL 5539879, at *12.

from the policies issued by AXIS. The *Medical Depot* policies extended coverage to claims made or reported "during the Policy Period, or any subsequent renewal of this policy."[9] The *Medical Depot* court emphasized that this language covered claims made during an earlier policy period even if the claims were reported during the period of a renewed policy.[10] Accordingly, since the insured (Medical Depot) provided notice within "any subsequent renewal," it gave the insurer notice within the period of coverage under the policy.[11] Here, the policy lacks language extending coverage to claims reported during any subsequent renewal. Instead, it requires notice during the specified policy period.

In *Devon Park*, the insured issuer issued a claims-made policy and subsequently renewed that policy. The event connected to the claim happened during the initial policy period, but the insured reported the claim after the policy's notice period.[12] The court concluded that *Medical Depot* was inapplicable.[13] Despite GAA's assertion that *Medical Depot* stands for the sweeping proposition that a prejudice requirement exists whenever an insurer issues a renewal policy, *Devon Park* suggests that this requirement exists only if the parties expressly agree to such terms. Therefore, we conclude that, under Delaware law, AXIS need not show prejudice to enforce the notice requirement.

---

[9] *Id.* at *5, *11.

[10] *Id.* at *11, *13.

[11] *Id.* at *6.

[12] *Devon Park Assoc.,* No. 18-2011-LPS.

[13] *Id.* at 55. ("I find [*Medical Depot*] very different than the one here. In that case, the policy extended coverage to claims made or reported 'during any subsequent renewal,' which is a provision not present in the policy here.").

Delaware law also favors enforcing clear and unambiguous contractual provisions. Thus, both parties are bound by the plain text of the policy. Accordingly, we won't manufacture an ambiguity to create or modify rights, liabilities, or duties that the contracting parties did not agree to.[14]

Accordingly, GAA should have reported the claim by February 29, 2020—90 days after December 1, 2019, the end of the policy period. GAA instead provided notice of the claim on April 21, 2020—almost two months after February 29.

## III. Conclusion

For the reasons discussed, we will affirm the order of the District Court denying coverage because of the late notice to the insurer.[15]

---

[14] *Hartford Accident & Indem.,* 970 F.2d at 1270 (citing *Hallowell v. State Farm Mut. Auto. Ins.*, 443 A.2d 925, 926 (Del. 1982)).

[15] We appreciate GAA's argument that it could not notify AXIS of the claim because the latter's offices were closed because of the covid pandemic. However, allowing for that eventuality would require us to read language into the insurance contract that would amend the notice provision. We will not interpret the notice provision as if it had language that the parties never included or agreed upon.